UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL J. CHRISTOFF, derivatively on
behalf of GALEXA, INC., a Florida
corporation.

    *Plaintiff,*

v.

PAUL A. INGLESE, an individual;
NORTHSTAR TECHNOLOGIES
GROUP, INC., a Florida corporation;
and GALEXA, INC., a Florida corporation.

    *Defendants.*
_____/

Case No.
Hon.

## VERIFIED COMPLAINT

Plaintiff, Michael J. Christoff, sues Defendants, Paul A. Inglese, Northstar Technologies, Group, Inc., and Galexa, Inc. and alleges:

### JURISDICTION AND VENUE

1. Plaintiff, Michael J. Christoff ("Christoff"), is an individual residing in Collier County, Florida, which is within the judicial district of this Court.

2. Defendant, Paul A. Inglese ("Inglese"), is an individual residing in Collier County, Florida, which is within the judicial district of this Court.

3. Defendant, Northstar Technologies Group, Inc. ("Northstar") is a Florida corporation with its principal place of business in Collier County, Florida, which is within the judicial district of this Court.

4. Defendant, Galexa, Inc. ("Galexa"), is a Florida corporation with its principal place of business in Collier County, Florida, which is within the judicial district of this Court.

1

5. Galexa is joined in this action by and through derivative claims brought by Christoff as minority shareholder of Galexa.

6. This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including 15 U.S.C. § 1120 and 18 U.S.C. § 1030.

7. This Court has supplemental matter jurisdiction over the related claims arising under Florida state law pursuant to 28 U.S.C. § 1367 as the claims are so related to claims arising under the Court's original jurisdiction that they form part of the same case or controversy.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391 as the Defendants reside within this judicial district and a substantial portion of the events giving rise to Plaintiff's claims occurred within this judicial district.

## FACTS

9. In November of 2018, Galexa was initially formed for the general purpose of selling and constructing homes through the use of novel building systems and technologies.

10. Galexa's building systems came to be described as "fiber reinforced polymer composite building systems" and, in one relevant instance, branded as the "Galexa ArmorClad-XD Fiberglass Panel System."

11. Galexa continued the work of non-party, Boxville, LLC, a Florida limited liability company involving the same principals.

12. In consideration of Christoff's prior investment and contribution to Boxville, LLC, Christoff was initially granted ownership of 5% of the shares in Galexa, as of its formation.

13. Thereafter, Christoff acquired additional shares and holds at least 15% of the shares of the company.

14. As early as December of 2018, Galexa began using its stylized common law trademark in commerce, which is depicted as follows:



15. Defendant Inglese served as Galexa's Chief Operating Officer and also its nominal Vice President for a time.

16. At all times pertinent, Inglese's work and creation done on behalf of Galexa was to become Galexa's property and not Inglese's individually.

17. Galexa agreed that its intellectual property would be held by a subsidiary. ["**Exhibit A**"].

18. Throughout Galexa's existence, Inglese developed Galexa's building system technologies with a view toward registering patents therein and obtaining Florida product approvals.

19. Inglese produced marketing materials for Galexa.

20. The marketing materials produced by Inglese for Galexa included a representation describing Galexa's intellectual property as "patent pending."

21. Inglese's development of Galexa's technologies culminated in Galexa's receipt of a "Product Approval" from the Florida Department of Professional and Business Regulation pursuant to the Florida Building Code.

22. The "Product Approval" was validated in Galexa's name on February 24, 2020.

23. The "Product Approval" was for the above-referenced "Galexa ArmorClad-XD Fiberglass Panel System."

24. The "Product Approval" was issued thereafter bearing Product Approval No. FL31660.

25. On May 5, 2020, Inglese announced, by letter to Galexa's shareholders, that Inglese had been appointed Chief Executive Officer of Galexa.

26. On or about May 7, 2020, Inglese engaged in self-dealing by unilaterally issuing himself more shares in Galexa, in exchange for no or inadequate consideration.

27. On or about May 7, 2020, Inglese unilaterally issued himself more shares in Galexa, in exchange for no consideration, to dilute the interests of Galexa's other shareholders.

28. On or about May 7, 2020, by unilaterally issuing himself more shares in Galexa, Inglese simply erased shares of one or more shareholders from the books of Galexa.

29. On or about May 7, 2020, by unilaterally issuing himself more shares in Galexa, Inglese unlawfully rewrote Galexa's capitalization table.

30. For a period of time after May 7, 2020, Inglese represented himself as the majority shareholder of Galexa.

31. On May 17, 2020, by written letter, Inglese announced his resignation as President and Chief Executive Officer, ending his tenure of less than two (2) weeks.

32. On May 17, 2020, Inglese announced an intention to transfer all his shares in Galexa.

33. On May 17, 2020, Inglese declared his transfer of all of Galexa's intellectual property.

34. On May 17, 2020, Inglese declared his taking of all of Galexa's intellectual property.

35.     On May 17, 2020, Inglese declared his claim to title ownership of all of Galexa's intellectual property.

36.     On May 17, 2020, Inglese summarily stated, "I personally developed, invented and own three building technologies, the 'Embed Connector for a thinshell concrete wall panel', 'Composite ArmorClad-XD wall panel,' and the Composite Structural Building System."

37.     Accordingly, Inglese intended to personally take the remainder of Galexa's substantial assets for his own beneficial use, and in exchange for no payment or consideration.

38.     Inglese transferred Galexa's assets to himself and/or Northstar.

39.     Inglese ignored that title to the same assets resided in Galexa as a matter of law.

40.     On or about May 21, 2020, Inglese began marketing Galexa's products through, upon information and belief, Northstar.

41.     On or about May 21, 2020, Inglese began marketing Galexa's products by way of the website displayed at the web domain, www.northstartechnologies.us.

42.     A visual comparison of materials derived from the websites of Galexa and Northstar shows that Inglese had undertaken to openly compete directly with Galexa in the same business using Galexa's own property, as in the following exemplary true and correct depictions:



43. On or about May 26, 2020, Inglese filed an application with the USPTO identifying himself as the owner of Galexa's common law trademark rights.

44. On or about May 26, 2020, Inglese filed an application with the USPTO declaring the mark to be used in connection with "Manufactured housing."

45. On or about May 26, 2020, Inglese filed an application with the USPTO identifying his website as www.galexausa.com.

46. A true and correct copy of the Inglese's trademark application is attached hereto as "**Exhibit B**."

47. In his trademark application, Inglese falsely represented that he "believes that [he] is the owner of the trademark/service mark sought to be registered."

48. In his trademark application, Inglese falsely represented that "to the best of [Inglese's] knowledge and belief, no other persons . . . have the right to use the mark in

6

commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

49. In his trademark application, Inglese falsely represented that he personally used Galexa's mark in commerce since at least December of 2018.

50. In his trademark application, Inglese falsely represented that the allegations made [in the application] have evidentiary support.

51. In his trademark application, Inglese falsely represented that the factual contentions made [in the application] have evidentiary support.

52. In his trademark application, Inglese acknowledged "being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom..."

53. In his trademark application, Inglese falsely represented that "that all statements made of [his] own knowledge are true and all statements on information and belief are believed to be true."

54. On or about June 26, 2020, Inglese accessed third party computer servers holding Galexa's data and technical engineering data, without authorization.

55. On or about June 26, 2020, Inglese terminated Galexa's access to Galexa's data for its business operations.

56. On or about June 26, 2020, Inglese terminated Galexa's access to Galexa's technical engineering data for its business operations.

57. Galexa's data and technical engineering data were stored on remote by non-party, Shoptech Industrial Software, Corp., based in the State of Connecticut.

58. On or about July 15, 2020, Inglese accessed third party computer servers hosting Galexa's commercial website displayed at www.galexausa.com.

59. On or about July 15, 2020, Inglese deleted the display of Galexa's commercial website.

60. On or about July 15, 2020, Inglese terminated the display of Galexa's commercial website.

61. Galexa's commercial website was hosted by non-party, Squarespace, Inc., based in the State of New York.

62. In July of 2020, on multiple occasions Inglese interfered with Galexa's business relationships by falsely stating that Galexa was out of business.

63. As shown above, Inglese engaged in transactions from which he derived improper personal benefits in violation of Fla. Stat. § 607.0831.

64. Christoff has furnished notice to Galexa and Inglese, of demands and intent to bring derivative claims on behalf of Galexa's shareholders under Fla. Stat. § 607.0742.

65. Christoff has demanded the desired action of Galexa's directors.

66. A true and correct copy of Christoff's pre-suit demand and notice of derivative action are attached hereto as "**Exhibit C**."

67. Inglese has expressed an intention to refuse the demand.

68. Inglese has expressed an intention to reject the demand.

69. Inglese has expressed an intention to ignore the demand.

70. Accordingly, the demand is futile.

71. This action is not a collusive one to confer jurisdiction this Court would otherwise lack.

72. Irreparable injury will result because of Inglese's continued wrongful use of Galexa's assets.

73. Irreparable injury will result because of Inglese's fraudulent registration of trademark.

74. Irreparable injury will result because of Inglese's conversion of Galexa's assets.

75. Irreparable injury will result because of Galexa's failure to stop Inglese's misconduct.

76. Any conditions precedent to the bringing of this cause have been met, waived, or would be futile.

77. Plaintiff has retained the undersigned attorneys and is obligated to pay them a reasonable fee for their services.

### COUNT I – DERIVATIVE ACTION FOR FALSE AND FRAUDULENT REGISTRATION UNDER 15 U.S.C. § 1120
### (AGAINST INGLESE)

78. This count sets forth a derivative action for false and fraudulent registration of trademark under 15 U.S.C. § 1120, on behalf of the shareholders of Galexa against Inglese.

79. Paragraphs numbered 1 through 77 above are re-alleged and incorporated in this paragraph as though fully set forth.

80. On or about May 26, 2020, Inglese falsely represented to the USPTO that Inglese is personally the owner of the "Galexa" trademark.

81. On or about May 26, 2020, Inglese falsely represented that Inglese "believes that [Inglese] is the owner of the trademark/service mark sought to be registered."

82. On or about May 26, 2020, Inglese falsely represented that "no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

83. On or about May 26, 2020, Inglese falsely represented that he first used the Galexa's mark in commerce at least as early as December of 2018.

84. Inglese, as the purported former CEO of Galexa itself, knew his representations were false.

85. Inglese intended to transfer to vest rights to the trademark in himself personally through the filing of a false trademark registration application.

86. Inglese intended to deceive the USPTO.

87. Galexa has suffered damages proximately resulting from such reliance by the USPTO.

88. Galexa will continue to suffer damages proximately resulting from such reliance by the USPTO.

WHEREFORE, Plaintiff, Christoff on behalf of Galexa, demands judgment against Defendant Inglese:

    i. Awarding damages, interest, and costs;

    ii. Awarding statutory attorneys' fees;

    iii. Cancelling the application/registration of the subject "Galexa" mark pursuant to 15 U.S.C § 1119; and

    iv. A providing for such and further relief as may be deemed just and proper.

### COUNT II – DERIVATIVE ACTION FOR VIOLATION OF COMPUTER FRAUD ABUSE ACT UNDER 18 U.S.C. § 1030
### (AGAINST INGLESE)

89. This count sets forth a derivative action for violation of the computer fraud and abuse act set forth under 18 U.S.C. § 1030, on behalf of shareholders of Galexa against Inglese.

90. Paragraphs numbered 1 through 77 above are re-alleged and incorporated in this paragraph as though fully set forth.

91. The third-party servers housing Galexa's technical data and hosting Galexa's commercial website are "protected computers" as that term is defined under 18 U.S.C. § 1030, at least by being used by hundreds of parties and entities in connection with the conduct interstate commerce.

92. Inglese intentionally accessed the protected computers.

93. Inglese, having resigned as an officer of Galexa, did so without authorization.

94. Inglese caused damages to Galexa in excess of $5,000.00, including but not limited to executive and professional time necessarily expended to recover or recreate the technical and engineering data, and to rebuild Galexa's commercial website.

WHEREFORE, Plaintiff, Christoff on behalf of Galexa, demands judgment against Defendant Inglese, awarding damages, interest, costs, and such other and further relief as may be deemed just and proper.

### COUNT III – DERIVATIVE ACTION FOR DECLARATORY RELIEF
### (AGAINST INGLESE AND NORTHSTAR)

95. This count sets forth a derivative action, on behalf of the shareholders of Galexa, against Inglese and Northstar, for declaratory relief pursuant to Chapter 86 of the Florida Statutes.

96. Paragraphs numbered 1 through 77 above are re-alleged and incorporated in this paragraph as though fully set forth.

97. While acting as a controlling officer and fiduciary of Galexa, Inglese materially participated in the creation of Galexa's intangible and intellectual properties, including but not limited to inventions, designs, original works of authorship, websites, designs, drawings, specifications, copyright works, trademarks, tradenames, trade dress, trade secrets and related know-how, whether or not patentable or registrable under patent.

98. Inglese and Northstar expressly and implicitly assert that the intangible and intellectual properties Inglese helped create as an officer and fiduciary of Galexa may be owned and/or used exclusively for the benefit of Inglese.

99. Galexa asserts that the intangible and intellectual properties Inglese helped create as an officer and fiduciary of Galexa remain the property of Galexa by title or by Inglese's obligation to so assign such intellectual properties to Galexa.

100. The parties are in doubt or are uncertain as to existence or non-existence of the rights to Galexa's intangible assets and intellectual property.

101. Galexa, on the one hand, and Inglese and Northstar on the other hand, have, or reasonably may have a bona fide, actual, present, practical need for the declaration and they have an adverse and antagonistic interest in the outcome of the declaration, in fact and/or law.

102. Galexa, on the one hand, and Inglese and Northstar on the other hand, have an adverse and antagonistic interest in the outcome of the declaration, in fact and/or law.

103. The declaratory relief sought is not merely giving of legal advice by the Court or the answer to questions propounded from curiosity.

WHEREFORE Plaintiff, Christoff on behalf of Galexa, prays for declaratory judgment against Inglese and Northstar holding that:

i. That the Court take jurisdiction over the parties and the subject matter of this action; and

ii. Right and title to Defendant, Galexa intangible and intellectual properties relative to its products resides in Defendant, Galexa, or must be lawfully assigned to Galexa; or

iii. Defendant, Inglese is equitably obliged to commemorate title or assignment of such intellectual and intangible properties to Galexa, and

iv. Awarding whatever other and further or supplemental relief the Court deems just and proper.

**COUNT IV – DERIVATIVE ACTION FOR CONVERSION
(AGAINST INGLESE AND NORTHSTAR)**

104. This count sets forth a derivative action, on behalf of the shareholders of Galexa, against Inglese and Northstar for conversion.

105. Paragraphs numbered 1 through 77 above are re-alleged and incorporated in this paragraph as though fully set forth.

106. Galexa, through Inglese, transferred Galexa's intangible assets and intellectual property to Inglese and Northstar without authorization.

107. The transfer deprives Galexa of its intangible assets and intellectual property permanently or for an indefinite time.

108. The deprivation is inconsistent with Galexa's ownership interest in the property.

109. As a result, Galexa has suffered damages.

WHEREFORE, Plaintiff, Christoff on behalf of Galexa, demands judgment against Defendants Inglese and Northstar awarding damages, interest, costs, and such other and further relief as may be deemed just and proper.

## COUNT V –
## DERIVATIVE ACTION FOR BREACH OF FIDUCIARY DUTIES
## (AGAINST INGLESE)

110. This count sets forth a derivative action for breach of fiduciary duties, on behalf of the shareholders of Galexa, against Inglese, pursuant to Fla. Stat. § 607.0741.

111. Paragraphs numbered 1 through 77 above are re-alleged and incorporated in this paragraph as though fully set forth.

112. Inglese was an officer of Galexa.

113. Inglese was a director of Galexa.

114. Inglese was a controlling shareholder of Galexa.

115. Inglese had fiduciary duties to Galexa and its shareholders, including Christoff.

116. Inglese breached his fiduciary duties by engaging in transactions from which he derived improper personal benefits in violation of Fla. Stat. § 607.0831.

117. Inglese breached his fiduciary duties through mismanagement of corporate assets.

118. Inglese breached his fiduciary duties through waste of corporate assets.

119. Inglese breached his fiduciary duties to Galexa by misappropriating Galexa's corporate assets to his own use.

120. Inglese breached his fiduciary duties to Galexa by falsely asserting ownership over Galexa's intellectual property.

121. Inglese breached his fiduciary duties to Galexa by falsely asserting ownership over Galexa's mark.

122. Inglese breached his fiduciary duties to Galexa by seizing control of Galexa's technical data without authorization.

123. Inglese breached his fiduciary duties to Galexa by seizing control of Galexa's commercial website without authorization.

124. Inglese breached his fiduciary duties to Galexa by actively competing with Galexa.

125. Inglese breached his fiduciary duties to Galexa by directly competing with Galexa.

126. Galexa and its shareholders have suffered damages as a direct result of Inglese's breach of fiduciary duties.

127. Galexa and its shareholders are suffering damages as a direct result of Inglese's breach of fiduciary duties.

128. Inglese's continued unauthorized use of Galexa's assets will cause irreparable harm to Galexa, such that Galexa is entitled to an injunction against Inglese s further competition, use, and disposition of Galexa's assets.

129. Inglese's continued unlawful use of Galexa's assets will cause irreparable harm to Galexa, such that Galexa is entitled to an injunction against Inglese's further competition, use, and disposition of Galexa's assets.

130. Inglese's continued unauthorized use of Gaxlea's trade secrets will cause irreparable harm to Galexa, such that Galexa is entitled to an injunction against Inglese's further competition, use, and disposition of Galexa's trade secrets.

131. Inglese's continued unlawful use of Galexa's trade secrets will cause irreparable harm to Galexa, such that Galexa is entitled to an injunction against Inglese's further competition, use, and disposition of Galexa's trade secrets.

132. Inglese's continued unauthorized use of Galexa's confidential business information will cause irreparable harm to Galexa, such that Galexa is entitled to an injunction against Inglese's further competition, use, and disposition of Galexa's confidential business information.

133. Inglese's continued unlawful use of Galexa's confidential business information will cause irreparable harm to Galexa, such that Galexa is entitled to an injunction against Inglese's further competition, use, and disposition of Galexa's confidential business information.

134. Inglese breached his fiduciary duties knowingly.

135. Inglese breached his fiduciary duties intentionally.

136. Inglese breached his fiduciary duties willfully.

137. Inglese breached his fiduciary duties with malice.

WHEREFORE, Plaintiff, Christoff on behalf of Galexa, demands judgment against Defendant Inglese:

i. Awarding damages and interest;

ii. Awarding attorneys' fees and costs to Plaintiff Christoff pursuant to Fla. Stat § 607.0746;

iii. Providing for temporary and/or permanent injunction barring Defendant Inglese ongoing competition and unauthorized use of the assets of Defendant Galexa; and

iv. A providing for such and further relief as may be deemed just and proper.

Dated this 28th day of July 2020.

HOLMES FRASER, P.A.

 /s/ *Daniel P. Fraser*
Daniel P. Fraser, Esq.
Florida Bar No.: 98406
David P. Fraser, Esq.
Florida Bar No.: 91085
Holmes Fraser, P.A.

        711 5th Avenue South, Suite 200
        Naples, Florida 34102
        Tel. (239) 228-7280; Fax. (239) 790-5766
        danfraser@holmesfraser.com
        dfraser@holmesfraser.com
        service@holmesfraser.com
        Counsel for Plaintiff

## VERIFICATION BY MICHAEL J. CHRISTOFF

Under penalties of perjury, I declare that I have read the foregoing Verified Complaint and that the facts stated in it are true to the best of my personal knowledge and belief.

MICHAEL J. CHRISTOFF

By: _____

STATE OF FLORIDA     )
COUNTY OF COLLIER  )

The foregoing pleading was acknowledged before me this 27 day of July 2020, by Michael J. Christoff, an individual, who is personally known to me or has produce the following identification.

_____
Notary Public, State of Florida
My Commission Expires: Jan 12, 2024

SHANE BASSO
Notary Public - State of Florida
Commission # GG 946502
My Comm. Expires Jan 12, 2024

18